1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    DAVIS NGUYEN,                              No.  2:18-CV-0909-JAM-DMC-P

12                    Petitioner,

13          v.                                   <u>FINDINGS AND RECOMMENDATIONS</u>

14    DAVID BAUGHMAN,

15                    Respondent.

16

17          Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court are Petitioner's petition

19    for a writ of habeas corpus, ECF No. 1, Respondent's answer, ECF No. 15, and Petitioner's

20    traverse, ECF No. 19.

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

                                                    1

# I. BACKGROUND

### A.    <u>Facts</u>[1]

The state court recited the following facts, and Petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

*Prosecution Case*

In July 2014, Kenneth Prather was a correctional officer at the California State Prison, Sacramento. As part of his duties, he monitored visitations between inmates and visitors. He explained that inmates are subject to a pat search before entering the visiting room to prevent them from bringing contraband into the room. He further explained that visitors are visually inspected and required to walk through a metal detector prior to entering the visiting room. Visitors are also required to provide a photo identification and paperwork showing which inmate they are visiting. Several correctional officers and numerous cameras monitor the visiting room.

On July 26, 2014, J'Leesa Lewis visited defendant. Prather was familiar with Lewis because she regularly visited defendant. Prior to checking in with Prather, Lewis went to the bathroom. When she returned from the bathroom and presented her identification and paperwork, she did not make eye contact with Prather and failed to respond to a question inquiring about how her day was going. After Prather checked Lewis in, she walked into the visiting room.

Typically, Lewis was very social and talkative; however, on this day she was not. Prather noted Lewis was acting very nervously. Based on her abnormal behavior, Prather suspected that Lewis possessed contraband and decided to observe her through one of the cameras. While observing Lewis, Prather noticed her adjust something in her mouth with her tongue.

Shortly after defendant entered the visiting room, Lewis and defendant engaged in a lengthy kiss. Following the kiss, defendant appeared to have something in his mouth. Prather also noticed that defendant did not move his mouth very much when he talked to Lewis. Based on his observations, Prather requested that defendant be summoned for an inspection.

When defendant was initially summoned over the PA system, he did not move. After he was summoned a second time, defendant appeared to swallow something. Defendant was eventually escorted to the search room where a search of his mouth was performed. Because the search did not reveal any contraband, defendant was allowed to continue his visit with Lewis. However, after the videotape of defendant entering the visiting room was reviewed, his visit with Lewis was terminated and he was transferred to a contraband surveillance cell.

---

[1]     Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence.  <u>See</u> Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012).  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  <u>See id.</u>  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

1

2

The next day, a correctional officer retrieved two bindles of methamphetamine from defendant's feces. Later that day, an additional bindle of methamphetamine was retrieved from defendant's feces.

3

*Defense Case*

4

5

6

7

8

9

10

Defendant testified in his own defense.  He said that he had been incarcerated since 2009 for attempted murder, and that he had met a man named Desmond Moreland in prison in early 2013.  In Late 2013 or early 2014, Moreland told defendant that he was a mob boss in a criminal organization known as the Black Mafia.  In support of his claim, Moreland showed defendant various documents discussing some of the things he had done.  Moreland told defendant that members of his organization had kidnapped and killed police officers and had pressured United States Senator Harry Reid into retirement.  He also said that he had stopped his organization from killing the judge who had presided over his trial. Defendant testified he believed Moreland, including Moreland's claim that he had contacts outside of prison who were involved in a criminal organization.

11

12

13

14

In June or early July 2014, Moreland told defendant that he needed him to get caught bringing methamphetamine into the prison visiting room.  When defendant asked Moreland why he wanted him to do that, Moreland did not respond.  Instead, Moreland showed defendant a piece of paper with the names of defendant's family members and their addresses.  Moreland did not tell defendant what he planned to do to defendant's family.  Defendant, however, understood that Moreland was threatening to harm his family.

15

16

Around a month later, an inmate delivered methamphetamine to defendant in the recreation yard.  Defendant claimed that he put the methamphetamine in his pocket, and that the methamphetamine was not detected during a patdown search conducted before he returned to his cell.

17

18

19

20

Two days after defendant received the methamphetamine, Lewis visited defendant.  Prior to the visit, defendant told Lewis that he planned to get caught with methamphetamine in the visiting room, and that she needed to tell the correctional officers she had brought the methamphetamine with her.  Defendant explained that he believed Lewis would be safer in jail than out on the street where Moreland's associates could find her.  Defendant, however, did not tell Lewis about Moreland's threat.

21

22

23

Defendant claimed that he put the methamphetamine into his rectum prior to entering the visiting room so he would not get caught during a strip search.  According to defendant, after kissing Lewis, he pretended like she had passed him something.  He said that his plan was to be placed on "potty watch" so that he would get caught with the methamphetamine.

24

25

26

27

28

Defendant explained that he did not inform any correctional officer about Moreland's threat because he feared what Moreland would do to his family if he was moved before he complied with Moreland's demand. Defendant further explained that he did not warn his family about Moreland's threat because he was afraid they were being watched by Moreland's associates.  Defendant claimed that he did not believe the police could protect his family if he told them about Moreland's threat. He testified that he believed that the only way to protect his family was to comply with Moreland's demand.  Defendant failed to explain why he thought it was best for Lewis to be arrested if he believed that complying

3

1    with Moreland's demand would keep her safe.

2    Unpublished opinion of the California Court of Appeal in <u>People v.
     Nguyen</u>, Case No. C081979, Lod. Doc. 6.[2]

3

4    **B.      Procedural History**

5            Following a jury trial, Petitioner was found guilty of possessing methamphetamine

6    in a state prison.  <u>See id.</u> at 1.  In a bifurcated proceeding, the trial court found true the allegation

7    that Petitioner had a prior strike.  <u>See id.</u> at 6.  Petitioner was sentenced to an additional eight

8    years in prison.  <u>See id.</u>  On April 20, 2017, the California Court of Appeal affirmed the

9    conviction and sentence.  <u>See id.</u>  On July 12, 2017, the California Supreme Court denied review

10   without comment or citation.  <u>See</u> Lod. Doc. 8.

11           Petitioner filed a state post-conviction action in the Sacramento County Superior

12   Court, which was denied in a reasoned decision issued on November 6, 2017.  <u>See</u> Lod. Doc. 10.

13   Petitioner then filed a second post-conviction action in the California Court of Appeal, which

14   denied relief without comment or citation on December 7, 2017.  <u>See</u> Lod. Doc. 12.  Finally,

15   Petitioner filed a third state court post-conviction action in the California Supreme Court, which

16   was denied with citation to <u>In re Waltreas</u>, 623 Cal.2d 218, 225 (1965), on March 28, 2018.  <u>See</u>

17   Lod. Doc. 14.

18

19                              **II.  STANDARDS OF REVIEW**

20           Because this action was filed after April 26, 1996, the provisions of the

21   Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) are presumptively applicable.

22   <u>See Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Calderon v. United States Dist. Ct. (Beeler)</u>, 128

23   F.3d 1283, 1287 (9th Cir. 1997), <u>cert.</u> <u>denied,</u> 522 U.S. 1099 (1998).  The AEDPA does not,

24   however, apply in all circumstances.  When it is clear that a state court has <u>not</u> reached the merits

25   of a petitioner's claim, because it was not raised in state court or because the court denied it on

26   procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must

27   _____

28       [2]     Citation to "Lod. Doc." refer to the state court record lodged with this Court on
     August 9, 2018.  <u>See</u> ECF No. 16.

1    review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the

2    AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim

3    under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002)

4    (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA

5    did not apply because evidence of the perjury was adduced only at the evidentiary hearing in

6    federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where

7    state court had issued a ruling on the merits of a related claim, but not the claim alleged by

8    petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and

9    federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

10          Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

11   not available for any claim decided on the merits in state court proceedings unless the state court's

12   adjudication of the claim:

>    (1) resulted in a decision that was contrary to, or involved an unreasonable
>    application of, clearly established Federal law, as determined by the
>    Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination
>    of the facts in light of the evidence presented in the State court proceeding.

17   Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is

18   "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

19   standards, "clearly established law" means those holdings of the United States Supreme Court as

20   of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

21   (citing Williams, 529 U.S. at 412).  "What matters are the holdings of the Supreme Court, not the

22   holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc).

23   Supreme Court precedent is not clearly established law, and therefore federal habeas relief is

24   unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742, 753-54

25   (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal

26   law to be clearly established, the Supreme Court must provide a "categorical answer" to the

27   question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a state

28   court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

1  contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

2  created by state conduct at trial because the Court had never applied the test to spectators'

3  conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

4  holdings.  See Carey, 549 U.S. at 74.

5          In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

6  majority of the Court), the United States Supreme Court explained these different standards.  A

7  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

8  the Supreme Court on the same question of law, or if the state court decides the case differently

9  than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

10  court decision is also "contrary to" established law if it applies a rule which contradicts the

11  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

12  that Supreme Court precedent requires a contrary outcome because the state court applied the

13  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme Court

14  cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See id. at

15  406.  If a state court decision is "contrary to" clearly established law, it is reviewed to determine

16  first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040, 1052 n.6

17  (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal

18  habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the

19  error had a substantial and injurious effect on the verdict, or was harmless.  See id.

20          State court decisions are reviewed under the far more deferential "unreasonable

21  application of" standard where it identifies the correct legal rule from Supreme Court cases, but

22  unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

23  510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

24  that federal habeas relief may be available under this standard where the state court either

25  unreasonably extends a legal principle to a new context where it should not apply, or

26  unreasonably refuses to extend that principle to a new context where it should apply.  See

27  Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

28  decision is not an "unreasonable application of" controlling law simply because it is an erroneous

6

or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.  The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.


### III.  DISCUSSION

Petitioner claims: (1) the trial court erred by excluding the testimony of inmate Moreland; and (2) appellate counsel was ineffective for failing to file a petition for rehearing.

### A.   **Exclusion of Testimony**

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994).   To raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).   In any event, an evidentiary error is considered harmless if it did not have a substantial and injurious effect in determining the jury's verdict.  See Padilla v. Terhune, 309 F.3d 614, 621 (9th Cir. 2002); see also Laboa v. Calderon, 224 F.3d 972, 976 (9th Cir. 2001).

In addressing Petitioner's claim, the California Court of Appeal began with a discussion of pre-trial proceedings related to Moreland's testimony:

Prior to trial, the prosecutor filed an in limine motion arguing that defendant should be precluded from offering Moreland's testimony in support of a necessity defense.  At the Evidence Code section 402 hearing, defense counsel presented Moreland's testimony, which was largely consistent with the testimony given by defendant later at trial and outlined immediately above.  As relevant here, Moreland testified that he had told defendant he had "criminal connections" ready to commit crimes outside of the prison and that he had directed defendant to "actually get caught with the drugs on him."  He had shown defendant a paper containing the names and addresses of defendant's family members while giving him this direction.  He said he could "reach" defendant's family and that the family could be hurt, but gave no specifics as to time or place or anything else.  Moreland testified that he had told defendant to carry the drugs into the visiting room.  He explained with some difficulty (characterized by the trial court as testimony containing 15-second pauses) that his reason for telling defendant to do this was so that Moreland could get to court and testify about his "real identity."  He described a plot wherein "the power that I'm involved with in organized crime, they conspired in my conviction and changed my whole identity and sent me into prison."  He

1   also described the prison medical staff as trying to "force-medicate [him]
    to make [him] not know who [he] really [was]."

2       Following the hearing, the trial court granted the prosecutor's
    request to exclude Moreland's testimony, finding that there was no

3   relevance to his testimony because it did not support all the elements of a
    necessity defense.  However, the court agreed to reevaluate the relevance

4   of Moreland's testimony after defendant testified.  After defendant
    testified as outlined above, defense counsel requested permission to call

5   Moreland as a witness.  The prosecutor objected on relevancy grounds.  In
    response, defense counsel argued that Moreland's testimony was a crucial

6   part of establishing defendant's necessity defense.  Defense counsel
    asserted Moreland's testimony would bolster defendant's credibility.

7       The trial court again denied defendant's request to present
    Moreland's testimony at trial, reasoning that the testimony defendant

8   sought to elicit from Moreland was not relevant to any defense the jury
    would be instructed on.  The court subsequently added that its primary

9   reason for excluding Moreland's testimony was pursuant to Evidence
    Code section 352.  Reasoning that any probative value of Moreland's

10  testimony in corroborating certain aspects of defendant's testimony would
    be outweighed by its tendency to waste time and confuse and "mislead the

11  jury because there is no probative value in [Moreland's] testimony which
    doesn't result in the giving of a necessity instruction," the court again

12  explained that it found the evidence insufficient to warrant a necessity
    instruction.

13
    Lod. Doc. 6, pgs. 5-6.

14

15      While Petitioner challenged on direct appeal the denial of a necessity instruction,

16  he does not do so here.  As to the merits of Petitioner's claim that the trial court erred in

17  excluding Moreland's testimony, the Court of Appeal stated:

18      Defendant. . . contends the trial court prejudicially erred in
    excluding Moreland's testimony.  According to defendant, Moreland's

19  testimony was clearly material and relevant to the defense of necessity.
    We disagree.

20      A trial court has broad discretion under Evidence Code section 352
    to exclude evidence if its probative value is substantially outweighed by

21  the probability that its admission will necessitate undue consumption of
    time or create substantial danger of undue prejudice, of confusing the

22  issues, or of misleading the jury. (*People v. Mills* (2010) 48 Cal.4th 158,
    195.) On appeal, we evaluate rulings under Evidence Code section 352

23  applying the abuse of discretion standard. (*Mills*, at p. 195.)
        " 'The necessity defense is very limited and depends on the lack of

24  a legal alternative to committing the crime. It excuses criminal conduct if
    it is justified by a need to avoid an imminent peril and there is no time to

25  resort to the legal authorities or such resort would be futile.' [Citation.]"
    (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1164, disapproved on

26  another ground in *People v. Cook* (2015) 60 Cal.4th 922, 939.) The
    testimony defendant sought to elicit from Moreland would not have

27  provided sufficient evidence to permit a jury to find that defendant's
    criminal conduct was justified by a need to avoid imminent peril and

28  defendant did not have a legal alternative to committing the charged

offense. Moreland did not testify pretrial that he threatened immediate or even specific harm at any time to defendant's family if defendant failed to bring methamphetamine into the visiting room. His testimony was vague and non-specific on the issue of threats to defendant's family, as was defendant's on that issue. Further, Moreland's testimony did not show that defendant had no reasonable legal alternative to committing the crime. It certainly did not show the objective reasonableness of any fear defendant may have had of imminent harm. Accordingly, the trial court did not err in excluding Moreland's testimony. The probative value of his testimony was limited by the inapplicability of the necessity defense. Further, the limited relevance of the testimony was substantially outweighed by the probability that its admission would necessitate consumption of undue time and particularly that it would create substantial danger of confusing the issues and misleading the jury.

In the absence of any error under Evidence Code section 352, we also reject defendant's claim that the exclusion of Moreland's testimony violated his due process rights. The routine and proper application of state evidentiary law does not impinge on a defendant's due process rights. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1010.)

Id. at 8-9.

Respondent contends the state court's determination cannot be either contrary to or based on an unreasonable application of controlling Supreme Court precedent because there simply is none on point.  See ECF No. 15, pgs. 9-10.  According to Respondent:

"[A] state court's decision rejecting a constitutional challenge to a trial court's exercise of discretion to exclude evidence cannot constitute an unreasonable application of clearly established Supreme Court precedent" because "[t]he Supreme Court has not squarely addressed whether a trial court's discretionary exclusion of evidence pursuant to an otherwise valid evidentiary rule can violate a defendant's constitutional rights, nor has it set forth standards for assessing such discretionary decisions." *Summerlin v. Busby*, 2011 WL 7143168, at *5 (C.D. Cal. Dec. 16, 2011) (citing *Moses v. Payne*, 555 F.3d 742, 758-59 (9th Cir. 2009)). Thus, the Court of Appeal's decision that the state trial court's discretionary ruling under California Evidence Code section 352 did not violate the federal Constitution simply cannot be contrary to or an unreasonable application of clearly established United States Supreme Court precedent because no such precedent exists. *See Moses v. Payne*, 555 F.3d at 758-59; *Chavez v. Foulk*, 2014 WL 5339379, at *15 (C.D. Cal. Aug 21, 2014) (state court's rejection of claim could not have been unreasonable given the "absence of United States Supreme Court authority either squarely addressing the trial court's discretionary exclusion of evidence (under Cal. Evid. Code § 352) and the right to present a complete defense [at] trial or establishing a 'controlling legal standard' for evaluating such exclusions"). Therefore, habeas relief is precluded.

ECF No. 15, pgs. 10-11.

/ / /

/ / /

1   Respondent also contends that, if error occurred, it was harmless because Petitioner

2   was not prejudiced by exclusion of Moreland's testimony.  Respondent contends:

3   In any event, the state court's decision barring Moreland's
    testimony was not prejudicial under *Brecht*. *See Brecht v. Abrahamson*,
4   507 U.S. 619, 622 (1993). As noted by the trial court and the court of
    appeal, in light of the fact that the jury would not be instructed on the
5   necessity defense, the relevance and probative value of Moreland's
    testimony was minimal at best. And, even though the evidence did not
6   support a necessity defense, Petitioner was not prohibited from testifying
    about Moreland's supposed ties to criminal organizations and how he
7   allegedly showed Petitioner a piece of paper containing his family's names
    and addresses when he ordered him to get caught with methamphetamine
8   in his possession. Thus, any alleged error in excluding Moreland's
    testimony did not have a "substantial and injurious effect or influence in
9   determining the jury's verdict." *Brecht*, 507 U.S. at 637.

10   ECF No. 15, pg. 11.

11   The Court agrees that federal habeas relief is not available because there is no clearly

12   established Supreme Court precedent on point.  See Moses, 555 F.3d 1t 758-59' Chavez, 2014 WL

13   5339379, at *15.  The Court also agrees that, if error occurred, it was harmless under Brecht because

14   Petitioner was able, through his testimony, to introduce the evidence he would have introduced

15   through Moreland's testimony.  Moreover, as the state court explained, Petitioner's testimony failed

16   to establish the elements of a necessity defense.

17   **B.**   **Ineffective Assistance of Appellate Counsel**

18   The Sixth Amendment guarantees the effective assistance of counsel.  The United

19   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

20   Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all

21   the circumstances, counsel's performance fell below an objective standard of reasonableness.  See

22   id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have

23   been the result of reasonable professional judgment.  See id. at 690.  The federal court must then

24   determine whether, in light of all the circumstances, the identified acts or omissions were outside

25   the wide range of professional competent assistance.  See id.   In making this determination,

26   however, there is a strong presumption "that counsel's conduct was within the wide range of

27   reasonable assistance, and that he exercised acceptable professional judgment in all significant

28   decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S.

11

1   at 689).

2          Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S.

3   at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

4   unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

5   reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;

6   see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

7   determine whether counsel's performance was deficient before examining the prejudice suffered

8   by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

9   ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

10  followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

11  697).

12         The Strickland standards also apply to appellate counsel. See Smith v. Robbins,

13  528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882

14  F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional

15  right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel,

16  as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463

17  U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.

18  Otherwise, the ability of counsel to present the client's case in accord with counsel's professional

19  evaluation would be "seriously undermined."  Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274

20  n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary,

21  and is not even particularly good appellate advocacy.")  Further, there is, of course, no obligation

22  to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88.  Thus,

23  counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to

24  demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors,

25  he probably would have prevailed on appeal.  See id. at n.9.

26  / / /

27  / / /

28  / / /

12

1    In his second federal habeas claim, Petitioner asserts: "Petitioner's appellate

2    counsel's representation was constitutionally inadequate for failing to call to the Court of

3    Appeal's action, <u>in a petition for rehearing</u>, that it left out of the opinion a legal issue tendered

4    which arguably might had [sic] resulted in a reversal or a favorable modification of the

5    judgment."  ECF No. 1, pg. 7 (emphasis added).  According to Petitioner:

6
> As plainly set forth in the petitioner's opening brief filed on direct
> appeal in this case the second argument presented (amongst three other
7    arguments made) was based on the "violation of due process and
> [petitioner's] right to present a complete defense" resulting from the trial
8    court erroneous exclusion of defense witness Desmond Moreland's
> testimony. (citations omitted).
9
> <u>Id.</u> at 23.
10

11    Petitioner first raised this claim on post-conviction relief in the Sacramento County

12    Superior Court.  In denying relief, the court stated: "[B]ecause it appears that the Court of Appeal

13    has already considered and rejected the arguments that Petitioner thinks his appellate counsel

14    should have raised in a petition for reconsideration, his second habeas claim [of ineffective

15    assistance of appellate counsel] is. . . procedurally barred."  Lod. Doc. 10, pg. 2.

16    Petitioner does not contend appellate counsel failed to raise any claims on appeal.

17    It is also clear that the Court of Appeal considered and rejected all arguments raised before it on

18    direct appeal.  Here, Petitioner's claim is limited to appellate counsel's failure to seek rehearing

19    on direct appeal.  According to Petitioner, counsel should have brought to the appellate court's

20    attention that it failed to address an issue raised, specifically that Petitioner's due process rights

21    had been denied because he was not permitted to present a complete defense when the trial court

22    denied an instruction on necessity and would not permit Moreland to testify.

23    A review of Petitioner's opening brief on direct appeal belies his claim.  In his first

24    claim on direct appeal, Petitioner argued "The trial court erroneously denied instruction on

25    appellant's necessity defense in violation of due process and his right to present a defense."  Lod.

26    Doc. 3, pgs. 2, 14-23 (Petitioner's opening brief).  In his second claim, Petitioner argued that the

27    exclusion of Moreland's testimony also denied him due process and the right to present a

28    complete defense.  <u>See id.</u> at 2, 28-33.  It is clear from Petitioner's brief that the gravamen of his

1   claims is his belief that Moreland's testimony was crucial to his necessity defense and that, absent

2   Moreland's testimony, Petitioner could not fairly establish that defense in violation of due

3   process.

4           In ruling on these claims, the Court of Appeal concluded that the evidence

5   presented at trial did not support a necessity instruction (a decision Petitioner does not challenge

6   here), and that the trial court properly excluded Moreland's testimony (discussed above).  See

7   Lod. Doc. 6, pgs. 6-9.  Because the appellate court determined that Petitioner was not entitled to

8   either a necessity defense or Moreland's trial testimony, the denial of neither one resulted in an

9   inability to present a complete defense in violation of due process.  In other words, Petitioner was

10  able to present a full defense based on the evidence properly adduced and notwithstanding

11  evidence properly excluded.  Certainly, appellate counsel did not render deficient performance in

12  deciding not to pursue the issue in a petition for rehearing by the Court of Appeal.

13

14                                     **IV.  CONCLUSION**

15          Based on the foregoing, the undersigned recommends that petitioner's petition for

16  a writ of habeas corpus, ECF No. 1, be denied.

17          These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

19  after being served with these findings and recommendations, any party may file written objections

20  with the court.  Responses to objections shall be filed within 14 days after service of objections.

21  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

22  Ylst, 951 F.2d 1153 (9th Cir. 1991).

23

24  Dated:  March 23, 2021

25                                     _____
                                       DENNIS M. COTA
26                                     UNITED STATES MAGISTRATE JUDGE

27

28

                                              14